UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

DEBRA W., )
 )
    **Plaintiff,** )
 )
v. )  Case No. 19-CV-644-CDL
 )
KILOLO KIJAKAZI, )
**Acting Commissioner of the** )
**Social Security Administration**[1], )
 )
    **Defendant.** )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** for further proceedings.

## Procedural History

Plaintiff filed an application for social security disability benefits on January 28, 2017. Plaintiff alleges she became disabled due to chronic (disabling) pain syndrome and extreme fatigue. Plaintiff originally alleged an onset date of August 22, 2010, but she amended her alleged onset date to September 20, 2014 at the administrative hearing. Prior

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

to the onset date, Plaintiff worked as a program analyst. The Commissioner denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on January 4, 2019. Testimony was given by the Plaintiff and a Vocational Expert (VE). On January 25, 2019, the ALJ issued a decision denying disability benefits. (R. 10). The Appeals Council affirmed the decision on March 21, 2019. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's January 25, 2019 decision under 42 U.S.C. § 405(g).

## Standard of Review

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Comm'r Soc. Sec.*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may

not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178 (quoting *Knight*, 756 F.3d at 1175).

## **Agency Proceedings**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084 (citation omitted). Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from her onset date of September 20, 2014 through her date of last insured of December 31, 2015. (R. 15). The ALJ's determination at step one is not challenged and is supported by substantial evidence.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084 (quoting *Grogan*, 399 F.3d at 1261).

3

A claimant who does not have a severe impairment is not disabled. *See Williams*, 844 F.2d at 751. Here, the ALJ determined that Plaintiff has severe impairments including history of breast cancer, double mastectomy with surgical repair, neuropathic pain, and hypertension. (R. 15). Thus, the ALJ properly proceeded to step three.

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is presumed to be disabled and is entitled to benefits. Otherwise, the ALJ proceeds to step four.

Here, the ALJ found at step three that Plaintiff's physical impairments do not meet or equal the criteria for any Listing. In reaching this conclusion, the ALJ considered the Listings under Sections 4.00 (Cardiovascular system) and 13.00 (Cancer (Malignant Neoplastic Diseases). (R. 16). In accordance with this finding, the ALJ proceeded to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. If the claimant can perform her previous work, she is not disabled. Step four includes three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ next determines the

physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that Plaintiff has the RFC to perform "light work as defined in 20 CFR 404.1567(b)." (R. 16). The ALJ found that,

> [s]pecifically, [Plaintiff] was limited to occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds through the date last insured. She was limited to standing and/or walking (with normal breaks) to at least six (6) hours in an 8-hour workday and sitting (with normal breaks) for at least six (6) hours in an 8-hour workday through the date last insured of December 31, 2015.

(*Id.*). The ALJ concluded that the above RFC assessment is supported by the objective medical evidence contained in the record for the relevant period, September 20, 2014 to December 31, 2015. (R. 20)

The VE stated Plaintiff's past work as an "Accountant, budget" (DOT Code # 160.162-022) is sedentary exertion, skilled work, but that Plaintiff performed it at the light-exertion level. *Id.* The VE testified that Plaintiff's RFC would allow for a return to this past relevant work. *Id.* Relying on the VE's testimony, the ALJ found that the Plaintiff is able to perform her past relevant work as actually or generally performed. *Id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 20, 2014, the alleged onset date, through December 31, 2015, the date last insured. *Id.*

### Plaintiff's Argument

Plaintiff raises one issue. She alleges that the ALJ failed to appropriately consider her pain in accordance with factors in *Luna v. Bowen* when determining her RFC. 834 F.2d 161 (10th Cir. 1987).

### Analysis

1. **Standards for Evaluating Subjective Symptoms**

In *Luna*, the Tenth Circuit outlined a framework for evaluating a disability claim based on pain:

> If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." … If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is disabling.

*Id.* at 163 (citation omitted). The Tenth Circuit has further described the *Luna* framework as requiring the ALJ to consider "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64).

The Social Security Administration regulations outline a two-step process for evaluating a claimant's subjective symptoms, including pain. *See* SSR 16-3P, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). In evaluating the symptoms, the agency first considers

"whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *See* SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once [such] impairment(s) . . . is established, [the agency] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *See id.* at 3.[2]

In conducting the analysis of the intensity and persistence of a claimant's pain, the agency will consider objective medical evidence and will also "carefully consider any other information [claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c)(3). The agency's regulations further explain its process of evaluating pain intensity and persistence:

> We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons…. Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

---

[2]   While the agency describes the analysis as involving a two-step process rather than the three considerations described in *Luna* and *Keyes-Zachary*, the regulatory policy generally comports with the approach as outlined in the cases. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016).

>   (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>   (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.*; *see also Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed); *see also Keyes-Zachary,* 695 F.3d at 1167.

### 2. Review of an ALJ's Symptom Evaluation

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson,* 602 F.3d at 1144 (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988)).[3]

### 3. Remand is Required for Additional Analysis

During the relevant timeframe, the Plaintiff had severe impairments of "history of breast cancer, double mastectomy with surgical repair, neuropathic pain and hypertension"

---

[3] The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *2 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Commissioner*, __ F. App'x __, 2021 WL 2794533, at *5, n.7 (10th Cir. Jul. 6, 2021) (citing SSR 16-3P, 2017 WL 5180304, at **1, 2, 8 (Oct. 25, 2017)).

(R. 15). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged pain. (*See id.* at 17). However, the ALJ determined that Plaintiff's pain medication "markedly improved her quality of life such that she was able to maintain her functionality." (*Id.*).

Because the Plaintiff had medically determinable impairments that could reasonably be expected to cause her pain, the ALJ was required at the next step to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529; *see Luna*, 834 F.2d at 163-64 (last step is to determine, upon consideration of all of the evidence, whether claimant's pain is disabling); *Keyes-Zachary*, 695 F.3d at 1166-67.

The ALJ provided a summary of certain of Plaintiff's statements about pain and other symptoms, then determined that:

> medical evidence, including medical evidence received at the hearing level, show[ed] that [Plaintiff's] pain pump essentially resolved [her] symptoms during the relevant period (September 20, 2014 to December 31, 2015).
>
> Specifically, Dr. Morris, [Plaintiff's] pain management specialist, during the relevant period, noted that [Plaintiff's] pain medications markedly improved her quality of life such that she was able to maintain her functionality (2F and 7F). Physical examinations during the relevant period are consistent with findings provided by Dr. Morris. Muscle strength testing in October 2014 was 5/5 in all major muscle groups. Special testing of the joints for range of motion, nerve compression, and joint contracture was within normal limits. Sensory testing for pain (pinprick), light touch, position, and vibration was intact. Gait was normal. (7F/3). [Plaintiff] rarely required supplemental pain medication for break through. She did required [sic] it for a few days in April 2015, but only after breaking limestone boulders up with a sledgehammer (7F/11).

9

> In summary, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record for the relevant period, September 20, 2014 to December 31, 2015.

(R. 19-20).

While the ALJ's rationale is facially reasonable, the Court finds that it improperly focuses on a selective portion of the medical records, while ignoring other evidence indicating that Plaintiff is more limited. "The determination . . . must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. While a formalistic factor-by-factor recitation of the evidence is not required, the ALJ must set forth the specific evidence he relies on in evaluating a claimant's subjective symptoms, and must give specific reasons for his findings that are closely linked to substantial evidence. *See White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001); *Kepler v. Chater,* 68 F.3d 387, 390-91 (10th Cir. 1995).

Here, the ALJ's decision does not adequately address the medical evidence relating to Plaintiff's pain, nor does it adequately explain why the ALJ apparently discounted certain statements by Plaintiff regarding her pain. For instance, at the hearing, Plaintiff testified that she cannot function as she did before she had cancer, that her pain level remains "at a level three or four," and that she is never absent of pain. (R. 43-44). Plaintiff also testified that her previous job required a lot of keyboarding, but that now, she cannot use a keyboard for more than five to ten minutes. (R. 38). Plaintiff testified that she has problems holding the phone to her ear due to pain in her arms and hands, and to being tired.

10

(R. 39). Plaintiff stated that she has problems sitting upright in a chair due to aching in her legs, back, and arms. (R. 46). Plaintiff testified she only drives once a week, at most, and does not drive by herself. (R. 33). When asked how she would do if she returned to the schedule of her previous job, Plaintiff testified "I think it'd kill me." (R. 45). When asked about potential absenteeism, she testified she "[p]robably could show up for one day and it would be probably pretty grueling after about three to four hours, and then [she would] probably be in bed for the rest of the week." *Id.*

Additionally, Plaintiff testified that her neuropathy makes it difficult to lift things, because her hands will go numb and she drops things. (R. 35). Plaintiff testified that she does not put dishes away because she will drop them and has difficulty holding a gallon of milk. *Id.* at 35-36. The ALJ apparently discounted these statements, finding instead that Plaintiff has the RFC to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. However, the ALJ's decision does not provide "specific reasons . . . that are closely linked to substantial evidence" for this determination, because it fails to address significantly probative evidence that Plaintiff's pain is not well-controlled, as set forth *infra*.

The ALJ found that Plaintiff's morphine pain pump "essentially resolved [her] symptoms during the relevant period." In making this finding, the ALJ acknowledged—but failed to explain—significant evidence to the contrary. The medical evidence indicates that Plaintiff frequently complained of and sought treatment for her neuropathic pain throughout the relevant time period. Furthermore, it is undisputed that Plaintiff has

required continuous hourly doses of morphine from a pain pump since February 2005 to control her pain. (*See* R. 18).

The ALJ's decision ignored medical evidence from numerous appointments indicating that Plaintiff reported ongoing pain, even with the intrathecal delivery of morphine. The medical record from Dr. Morris on October 31, 2014 noted that Plaintiff "states her pain is constant with the intrathecal medicines," she "describes her pain as sharp, throbbing, aching, stabbing," and "things [that] make[] pain worse are standing, walking, twisting, lifting and exercising." (R. 304). The June 4, 2015 record from Dr. Morris noted that "Plaintiff complains of pain all over her body." (R. 316). The August 6, 2015 pain management record noted Plaintiff "rated her pain today a 4 out of 10." (R. 318). The October 6, 2015 record from Dr. Morris noted that Plaintiff "complain[ed] of pain in the neck and down into the arms" and her "pain level is 2." (R. 320). And on May 13, 2015 and May 26, 2015, Paul Berry, M.D. found that Plaintiff's pain was "not well controlled." (R. 540, 543).

Where a significant portion of the record evidence supports the subjective testimony, the ALJ must explain why he has determined that the subjective testimony is not credible. While the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly probative." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Here, the ALJ did not sufficiently address the aforementioned probative evidence in the medical record that supports Plaintiff's complaints of pain. The ALJ's decision acknowledges that, even with the pain pump, Plaintiff continues to have pain that ranks

12

between 4 and 7 on a 0-10 pain scale and must occasionally bolus herself with additional morphine through the pain pump and/or take oxycodone/Percocet for breakthrough pain. (R. 18-19). Yet the ALJ dismisses this evidence, without explanation, in concluding that Plaintiff's "pain pump essentially resolved her symptoms." (R. 17, 19). The need for additional medication merited consideration, and the ALJ erred in failing to address this evidence in determining that Plaintiff's pain pump resolved her symptoms. *See* SSR 16-3p, at *8 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

> The ALJ provided the following summary of Plaintiff's hearing testimony:
>
> She has not worked since the alleged onset date. . . . She developed permanent neurological damage due to an allergic reaction to chemotherapy (Taxol) received for breast cancer, diagnosed in July 2003. The nerve damage causes problems with her extremities such that she drops cups due to numbness. She cannot use a keyboard. She requires an escort with walking on occasion due to numbness in her legs. She receives daily doses of morphine through a pain pump.

(R. 17). However, the ALJ's decision fails to reasonably explain why he discounted some of these symptoms in determining Plaintiff's RFC and her ability to perform past relevant work. The boilerplate statement that a claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" is not sufficient. *Id. See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were

not credible. . . . The use of standard boilerplate language will not suffice") (internal citations and quotation marks omitted).

For the reasons set forth above, the Court finds that the ALJ failed to address significantly probative evidence supporting Plaintiff's allegations. Importantly, Plaintiff's statements indicated that she is limited as to certain functions—such as using a keyboard and phone—that Plaintiff testified were required in her past relevant work. Thus, the Court cannot find the ALJ's error is harmless because a reasonable administrative factfinder could have found that Plaintiff's symptoms result in additional functional limitations, which could limit her ability to perform her past relevant work. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way).

## Conclusion

The Court finds the ALJ's decision is not supported by substantial evidence, and the ALJ failed to apply proper legal standards established by the Commissioner and the courts. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 2nd day of September, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge